Nos. 2025-1768, 2025-1781

# United States Court of Appeals
# For the Federal Circuit

MOTOROLA SOLUTIONS INC.,
*Appellant*

v.

STA GROUP LLC,
*Cross-Appellant*

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2023-01292

## CROSS-APPELLANT'S REPLY BRIEF

June 15, 2026

Jason A. Engel
K&L Gates LLP
70 W. Madison St., Suite 3300
Chicago, IL 60602
Phone: 312-807-4236
Email: jason.engel@klgates.com

Erik J. Halverson
K&L Gates LLP
4 Embarcadero Center
San Francisco, CA 94111
Phone: 415-882-8238
Email: erik.halverson@klgates.com

*[additional counsel on inside cover]*

Nicholas F. Lenning
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Phone: 206-370-6685
Email: nicholas.lenning@klgates.com

**COUNSEL FOR CROSS-APPELLANT
STA GROUP LLC**

***Exemplary Claim of U.S. Patent No. 7,324,802 ("'802 patent")***

Claims 1-21 of the '802 Patent were challenged. Claims 1–4, 6–10, and 17–21 were found unpatentable. Claims 5 and 11–16 were found not unpatentable.

Claim 1 is exemplary of the issues in the cross-appeal and is reproduced below:

1.    A method of managing communication in a communication system, the communication system receiving messages from a plurality of channels, the method comprising:

receiving a first message on a first dedicated channel from amongst the plurality of channels at the communication system, the plurality of channels being dedicated to different entities, the first dedicated channel being dedicated to receiving messages from a first entity;

receiving a second message on a second dedicated channel being dedicated to receiving messages from a second entity from amongst the plurality of channels at the communication system, the second message overlapping with the first message in time;

determining one or more priorities for the first message received on the first dedicated channel from the first entity and the second message received on the second dedicated channel from the second entity based on at least one pre-defined parameter;

determining which message out of the first message and the second message should be stored and subsequently played based on the second message overlapping with the first message in time and one or more priorities assigned to the first and the second message;

playing the message having a higher priority between the first and the second message;

storing at least one message having a lower priority between the first and the second message based on the determination; and

playing the stored message subsequent to completing playing of the message having higher priority.

Appx0064, cl. 1

Claims 4, 5, and 11 are exemplary of the issues in the appeal and are reproduced below:

4.      The method of claim 1, wherein the predefined parameter comprises a type of the received messages.

5.      The method of claim 4, wherein the type of received messages being one of a group comprising audio, video, text, and image.

11.     A method of managing communication in a communication system, the communication system receiving messages from a plurality of channels, the method comprising:

receiving a first message on a first dedicated channel from amongst the plurality of channels at communication system, the plurality of channels being dedicated to different entities, the first dedicated channel being dedicated to receiving messages from a first entity;

receiving a second message on a second dedicated channel being dedicate to receiving messages from a second entity at the communication system, the second message overlapping with the first message in time;

prioritizing the first and second messages based on at least one predefined parameter;

determining which message of the first message and the second message should be stored and subsequently played based on the second message overlapping with the first message in time and one or more priorities assigned to the first and the second message;

playing the message having the highest priority;

storing the message having lower priority in a queue on the basis of the determination and the prioritization;

checking periodically the status of the message being played; and

playing the stored message having the highest priority.

Appx0064, cls. 4–5, 11.

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2025-1768, 2025-1781

**Short Case Caption** Motorola Solutions Inc. v. STA Group LLC

**Filing Party/Entity** STA Group LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/15/2026

Signature: /s/ Jason A. Engel

Name: Jason A. Engel

**FORM 9. Certificate of Interest**

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| STA Group LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable        ☐   Additional pages attached

| | | |
|---|---|---|
| K&L Gates LLP: Kyle M. Kantarek | K&L Gates LLP: Dennis A. Majewski | |
| K&L Gates LLP: Nolan R. Hubbard | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)   ☐ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable        ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page(s)**

I.    Introduction.................................................................................................1

II.   Argument ..................................................................................................2

   A. An Entity Is A Group, Locality, Or Unit.............................................2

   B. Ohel Does Not Disclose All Limitations...........................................11

      1. Ohel fails to disclose a first and second entity ..........................11

      2. Ohel's dispatcher and user cannot be the first and second entity ............12

III.  Conclusion ..............................................................................................16

i

## TABLE OF AUTHORITIES

**CASES**

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
   726 F.3d 1296 (Fed. Cir. 2013).................................................................9

*Google LLC v. EcoFactor, Inc.*,
   92 F.4th 1049 (Fed. Cir. 2024) ...............................................................2

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*,
   381 F.3d 1111 (Fed. Cir. 2004).................................................................2

*Phillips v. AWH Corp.*,
   415 F.3d, 1303 (Fed. Cir. 2005)...............................................................2

*Seabed Geosolutions (US) Inc. v. Magsesi FF LLC*,
   8 F.4th 1285 (Fed. Cir. 2021) .................................................................9

*Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*,
   731 F.3d 1271 (Fed. Cir. 2013)................................................................2

## I.   INTRODUCTION

The Final Written Decision ("FWD") incorrectly construed the claimed "entity" as "broad enough to include dispatchers and individual users." Appx0020. It did so in the face of the specification, which explains that the very problem addressed by U.S. Patent No. 7,324,802 (the "'802 Patent"); managing communications dedicated to a group/locality/unit or an "entity". Appx0060, 1:15–18; Appx0064, 9:48–49.

Motorola ("MSI") accuses STA as engaging in outcome-driven analysis. MSI Reply, 1. However, this is the exact process MSI engages in to uphold an improper claim construction of "entity" as "a broad and ordinary term that encompasses a source[.]" MSI Reply, 26. To support the Board's construction, MSI characterizes the technical background section of the '802 Patent as an exemplary environment, despite being clearly labeling as background. MSI Reply, 32; Appx0060, 1:12 ("Description of the Background Art"). This ignores that the '802 Patent's sole focus is effectively managing the messages received by different entities in an emergency communications system. Appx0060, 3:37–41.

This outcome-driven analysis is also clear from MSI's application of Ohel. Despite its attempt to disavow testimony offered by its testifying expert, MSI mixes and matches its challenge such that the dispatcher can be either the "first entity" or the "second entity" as only the communications of the dispatcher involve

1

determining any priority.  Accordingly, the FWD should be reversed with respect to Claims 1–4, 6–10, and 17–21, and remanded for further proceedings regarding only these claims with respect to Grounds 2 and 3.

## II.   ARGUMENT

### A.   An Entity Is A Group, Locality, Or Unit

In construing claims, courts look to "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."  *Phillips v. AWH Corp.*, 415 F.3d, 1303, 1314 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).  Courts "primarily rely on, the intrinsic evidence, including the claims themselves, the specification, and the prosecution history of the patent, which is usually dispositive."  *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1058 (Fed. Cir. 2024) (quoting *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1276 (Fed. Cir. 2013).  The intrinsic record supports that the proper construction of entity is a group, locality, or unit.

Claim 1 of the '802 Patent requires:

> receiving a first message on a first dedicated channel from amongst the plurality of channels at the communication system, ***the plurality of channels being dedicated to <u>different entities</u>***, the first dedicated channel being dedicated to receiving messages from a first ***entity***;

2

> receiving a second message on a second dedicated channel being dedicated to receiving messages from a second *entity* from amongst the plurality of channels at the communication system, the second message overlapping with the first message in time;

Appx0064, 9:46–55 (emphasis added.)

In the claimed methods and systems, a first entity sends messages on a first dedicated channel and a second entity sends messages on a second dedicated channel. *Id.* The specification is clear that, in an emergency communication system it is groups, units, or localities that are allocated dedicated channels, confirming these are the claimed entities. Appx0060, 1:15–18 ("Each emergency communication system supports a plurality of communication channels, wherein each channel may be dedicated to a group/locality/unit."). Figure 1 "illustrates an exemplary environment in which the invention operates[.]" Appx0061, 3:19–21, 3:52–54.

3



FIG. 1

Appx0055.

The emergency communication system 102 receives messages on the multiple communication channels. Appx0061, 3:62–63. The users 106 send these messages to the emergency communication system. Appx0061, 3:63–4:5. When multiple users 106 send messages at the same time to the emergency communication system 102, messages can be lost without use of the claimed system. Appx0061, 4:6–13. "Dispatchers 104 are the operators who handle the communication for the emergency teams and respond to emergency messages received from a plurality of users 106." Appx0061, 3:59–62. The dispatchers 106 handle communications of

4

each message among the users 106 in their departments, but do not themselves send messages to the communication system 102. *Id.*

As shown in the annotation of Figure 1 (reproduced below), the users of the police department grouped in blue communicate on one dedicated channel—they are one entity. *See* Appx1561. The users of the fire department are grouped in red and are likewise a single, separate entity communicating on a separate dedicated channel. *Id.*



Appx1561.

MSI misconstrues multiple sentences in the specification to support its argument. The '802 patent explains that its invention "can operate between any two processes or entities, including users, devices, functional systems or combinations

5

of hardware and software" Appx0063, 7:18–20; MSI Reply, 26.  What MSI and the Board miss is that users are part of entities but are not themselves, alone without more, an entity.  Appx0063, 7:18–20.  The Claims of the '802 patent allow communications between users in different entities, such as a user in the police department and a user in the fire department shown above.  Communications within departments (e.g., police officer to police officer) occur within the same entity on the same dedicated channel.  These inter-entity user-to-user communications are not the communications referenced in the Claims of the '802 Patent.  *See* Appx0064, Cl. 1.

MSI's analysis of Figures 2 and 3 is equally self-serving.  MSI argues that the flowcharts describe "the receipt of 'radio message[s]' on a first and second channel without limiting the entities with which those channels are affiliated."  MSI Reply, 27.  Both figures plainly indicate messages are received on a first and second channel:



Appx0056; Appx0057; Appx0061, 4:30–32; Appx0061, 4:44–48. As the claims themselves make clear, each channel is dedicated to a distinct entity. Appx0064, 9:48–49. As a result, MSI's characterization is incorrect.

The description further clarifies the "emergency communication system 102 receives at least one second radio message on channels ***other than the first channel***." Appx0061, 4:45–48. The reference to separate channels also confirms that the separate groups, units, or localities (i.e., entities) are present because each channel is dedicated to a group, locality, or unit (i.e., entity). Appx0060, 1:15–18. It is from the users of these separate entities, communicating on their dedicated channels, that the emergency communication system 102 receives messages. Appx0061, 4:6–7; *see also* Appx0529 ("It should be noted that an entity may include any number of users. For example, a number of users may be in an entity and may be able to send messages on the dedicated channel."). A group, locality, or unit could hypothetically include a single user, but in that unique scenario the user must still have the dedicated channel of the group, locality, or unit.

7

STA's Opening Brief explained there is no other description of dedicated channel allocation beyond allocations of groups, units, and localities. STA Br., 45; Appx0060, 1:15–18. MSI does not dispute this. MSI Reply, 32.

Instead, MSI argues that this channel allocation is only with regard to specific embodiments and is not limiting in claim scope. *Id*. In the same way, MSI argues that "STA's construction also reads out the straightforward scenario in which different users of a *single* organization—connected through a single dispatcher—transmit overlapping messages where there is no second organization." *Id*., 30 (emphasis in original). ***Exactly***. The Claims of the '802 Patent do not cover this scenario—which is not described in the specification—and exactly where the FWD and MSI's construction is flawed.

The discussion of dedicated channel allocation is not with respect to a specific embodiment; it describes the architecture of emergency communication systems as existed at the time of filing. Appx0060, 1:12–21. In this known architecture, a problem occurred when multiple messages were received on different channels at one time. Appx0060, 1:22–31. The claimed allocation of designated channels across groups, localities, or units is explicitly linked to the problem addressed by the '802 Patent. Appx0060, 1:46–50.

Moreover, the claims reference to this structure by requiring "the plurality of channels being dedicated to ***different*** entities[.]" Appx0064, 9:48–49 (emphasis

8

added).   The reference to the dedicated channels discussed in the specification distinguishes the claims of the '802 Patent from the cited case law, which make no reference to limitations consistent with the disputed term's construction. *See Seabed Geosolutions (US) Inc. v. Magsesi FF LLC*, 8 F.4th 1285, 1288 (Fed. Cir. 2021) ("By contrast, it says nothing about the geophone being gimbaled or non-gimbaled."). Moreover, contrary to the situation in *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1301 (Fed. Cir. 2013), where example embodiments support the construction, the '802 Patent describes the very architecture the system operates upon, where entities are groups, localities, and units that communicate using the dedicated channel referenced in the claims. Appx0060, 1:15–18.   To treat this architecture as an exemplary embodiment divorces the solution of the '802 Patent from the very problem it intended to solve.

The scenario offered by MSI, where users of a single organization transmit overlapping messages is the exact way the claims are distinguishable from the prior art explained below.  The Patent Owner Response noted that "*Ohel's* system applied to the '802 Patent Figure 1 highlights these disparities. Rather than addressing issues that **dispatchers** face when receiving messages from different channels, *Ohel* addresses 'overtalk' that exists within a single multi-party channel—an issue that **users** face." Appx1563–1564 (showing *Ohel's* communication as annotations of Figure 1) (emphasis in original); *see* Appx0666, ¶¶4–8;.   Likewise, this same

9

argument was used to differentiate the claims from the prior art during prosecution. *See* Appx0529 ("Nowhere is it disclosed or suggested in Chang and Uchida, either alone or in combination, that channels are dedicated to entities.").

This is not the problem identified by the '802 Patent, and the solution offered relates specifically to the scenario when entities, communicating on their respective and separate designated channels, send overlapping messages. The '802 Patent does not describe embodiments addressing communications of just a single organization, and construing the claims to cover this scenario is legal error.

MSI casts aspersions that STA attempts to misrepresent the court by omitting that "an emergency communication system 102 is connected to the dispatchers 104 belonging to the emergency teams." Appx61, 3:54–56. But this statement does not establish that the dispatchers 104 themselves are entities. Dispatchers themselves are not the departments, localities, or units that are assigned dedicated channels. These dispatchers "are the operators who handle the communication for the emergency teams and respond to emergency messages received from a plurality of users 106." Appx0061, 3:59–62.

Lastly, MSI dismisses the relevance of Claim 6 because it does not refer to the claimed entities. MSI Reply, 37. But it has long been held that because "claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips*,

415 F.3d at 1314. Dependent claims, as part of the intrinsic record, are still useful for claim construction beyond the doctrine of claim differentiation. Claim 6 does not recite "entities" but does discuss the "first message" and the "second message[.]" Appx64, Cl. 6. These are the same messages sent by the entities described in Claim 1. Appx 64, Cl. 1. So, Claim 6 confirms the users, as included in the entities, communicate inputs to assign priorities of the first message and second message. Appx64, Cl. 6. This supports STA's construction of entity and is inconsistent with MSI's interpretation that communications supposedly originate with the dispatcher. MSI Reply, 36–37.

Therefore, the Board erred in failing to construe the first or second "entity" as "the group, locality, or unit" that is allocated a dedicated channel of Claim 1. Similar language exists in independent Claims 17-19, which should be treated similarly for the same reasons.

### B.    Ohel Does Not Disclose All Limitations

#### 1.    *Ohel fails to disclose a first and second entity*

STA's Opening Brief properly explained that Ohel describes communications within the same entity (group, locality, or unit). Opening Brief, 50. Ohel seeks to address a problem with overtalk, which occurs in "multi-party communication" over "a single communications channel." Appx0666, ¶4. Common examples include public safety communications like that of the police or fire department. Appx0666,

¶5. The users in Ohel's system are the same entity. They communicate on the same communication link or communications channel or group of channels. Appx0666, ¶12; Appx0669, ¶44. If a first message is playing over the communication link when a superior user (e.g., a dispatcher) begins a transmission, the first message is recorded so that way it can be heard at a later point in time. Appx0669, ¶48.

Ohel's failure to meet the correct claim construction of the '802 Patent is unrebutted. MSI only applies the FWD's improper construction. MSI Reply, 39–42; MSI Reply, 42–43. Accordingly, the FWD should be reversed with respect to Claims 1–4, 6–10, and 17–21 for this reason alone.

### 2. *Ohel's dispatcher and user cannot be the first and second entity*

The FWD found that the dispatcher and the user teach a first entity and a second entity. Appx0027–0028. But this mapping fails to teach "determining one or more priorities for the first message received on the first dedicated channel from the first entity and the second message received on the second dedicated channel from the second entity based on at least one pre-defined parameter[.]" Appx0064, 9:56–60. MSI argues that this argument has been waived. MSI Reply, 44. In fact, the Patent Owner Response explained how the Petition failed to adequately identify which entity was relied on as the first entity and the second entity. *See* Appx1564–1566. A proper identification of the first entity and second entity is directly tied to determining the priority of the messages of the first entity and second entity, and as

12

a result, this is not a waived argument, rather an impact of the argument that was made in Patent Owner's Response, underscoring the impropriety of the FWD's finding.

In Ohel, only the dispatcher is prioritized as a superior user. Appx0669–0670, ¶¶49–50. The dispatcher is the only superior user. Appx0669–0670, ¶49. Between non-superior users, there is no determination of priority and there is never a priority determined for a message from a non-superior message. Appx0670, ¶50.

MSI's example exactly illustrates this point. MSI Reply, 45. MSI argues:

> As Ohel describes, when a second user (entity) begins transmitting during an ongoing first transmission, Ohel's system conducts a query to determine whether the interrupting user is a "superior user"—such as a dispatcher—who would preempt the first user's continued transmission. Appx669 ¶¶ 46-48. If the interrupting user is a superior user, the first user's transmission is recorded for later playback while the superior user's message is played. *Id.* ¶ 48. If the interrupting user is *not* a superior user, the interrupting transmission is itself recorded to be played later. Appx670 ¶¶ 50-51.

*Id.* But in this argument, the only prioritization is the "superior user" who, in this example, is the second user. There is no priority determination for the alleged first entity (the first user). There is never any step of a determining of priority—only superior users are prioritized.

This is the same issue evidenced in Mr. Williams's testimony where MSI seeks to identify the dispatcher as both the first entity and the second entity depending on the circumstances. MSI disputes STA's characterization of Mr. Williams's testimony

13

as unclear and involving mixing and matching elements. *See* Opening Brief, 50–51; MSI Reply, 43. More specifically, MSI disputes that Mr. Williams's testified that his first entity and second entity mapping could be mixed and matched. MSI Reply, 43 ("STA asserts that Mr. Williams … 'viewed that these elements could be mixed and matched.'"). But that was Mr. Williams's exact testimony:

> Q. (By Mr. Kantarek) Okay. So the first entity is an officer and the second entity is a dispatcher; is that right?
>
> A. ***But it can be mixed and matched***, just depending on the embodiment. That particular embodiment is describing the police officer talking to another police officer, the first entity, and then interrupted by the second entity, the dispatcher.
>
> Q. So your opinion allows for mixing and matching first and second entities to render Claim obvious?
>
> MR. STAVINOHA: Objection. Form.
>
> A. It doesn't preclude other entities. To that -- I mean, the idea around the system is to provide -- one of the ideas, I should say, is not to lock -- is to have predefined protocols and however you wanted to do it. So it just so happens that particular embodiment described is an officer talking to another officer and interrupted by a dispatcher. That doesn't preclude that there's other potential embodiments in terms of how that plays out.
>
> Q. (By Mr. Kantarek) Well, let me just ask my question again because I don't -- it doesn't seem like you answered it. Your opinion allows for first and second entities to be mixed and matched to render Claim 1 obvious; right?
>
> MR. STAVINOHA: Objection. Form.
>
> A. I would say my opinion allows the specifics of individual -- ***first and second entities to vary depending on the particular use case as long as that particular use case meets the needs of the claim***.

14

Appx1660:25; Appx1661:1–25; Appx1662:1–6.

Mr. William's evasive testimony is expressly tied to how the mapped entities are insufficient to render Claim 1 obvious. Because Mr. William's relies on a prioritized dispatcher as its own entity, he was unwilling to restrict his identification of dispatcher to the first entity or second entity when arguing Ohel rendered the '802 Patent obvious. In doing so, his testimony confirms that there is not a prioritization of a first message from a first entity **and** second message from a second entity; there are never two prioritizations determined.

The issue is that the claims require determination of a priority of **both** "the first message received on the first dedicated channel from the first entity **and** the second message received on the second dedicated channel from the second entity." Appx0064, 9:56–60. But when both the first and second messages are not messages from a superior user, there is no prioritization determination.

This failure is inherently tied to viewing the first entity and second entity as a dispatcher and user within the same group, locality, or unit rather than identifying entities that are themselves a group, locality, and unit as an entity. Accordingly, the FWD should be reversed with respect to the obviousness determination for Claims 1–4, 6–10, and 17–21.

15

## III.    CONCLUSION

The FWD of the Board should be affirmed with respect to Claim 5 and 11–16 and remanded to the Board for further consideration with respect to the Ground 2 and Ground 3 challenge of Claims 1–4, 6–10, and 17–21.

Dated: June 15, 2026                    Respectfully submitted,

/s/ *Jason A. Engel*
Jason A. Engel
K&L Gates LLP
70 W. Madison St., Suite 3300
Chicago, IL 60602
Phone: 312-807-4236
Email: jason.engel@klgates.com

Erik J. Halverson
K&L Gates LLP
4 Embarcadero Center
San Francisco, CA 94111
Phone: 415-882-8238
Email: erik.halverson@klgates.com

Nicholas F. Lenning
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Phone: 206-370-6685
Email: nicholas.lenning@klgates.com

**COUNSEL FOR APPELLANT
STA GROUP LLC**

17

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Federal Circuit Rule 32(b) because this brief contains 3,153 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Word in 14-point Times New Roman font.

Dated: June 15, 2026                              By:    /s/ *Jason A. Engel*
                                                                        Jason A. Engel

18

**FORM 30. Certificate of Service**

**Form 30**
**July 2020**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF SERVICE</u>

**Case Number**  2025-1768, 25-1781

**Short Case Caption**  Motorola Solutions Inc. v. STA Group LLC

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on  06/15/2026

by  ☐ U.S. Mail  ☐ Hand Delivery  ☑ Email  ☐ Facsimile
☐ Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Lauren J. Dreyer | lauren.dreyer@bakerbotts.com |
| Robert L. Maier | robert.maier@bakerbotts.com |
| Clarke Stavinoha | clarke.stavinoha@bakerbotts.com |
| Eliot D. Williams | eliot.williams@bakerbotts.com |
| Lori Ding<br>Katherine M. Burke | lori.ding@bakerbotts.com<br>Katharine.burke@bakerbotts.com |

☐  Additional pages attached.

Date: 06/15/2026

Signature:  /s/ Jason A. Engel

Name:  Jason A. Engel